Bullard, J.
These two actions are instituted against the owners of the steamer Ohio Belle to recover damages resulting from a collision between that boat and the schooner called the Creole, alleged to have occurred by the fault of its officers. One of them is brought by the owner of the schooner, which was sunk and totally lost, and the other by the underwriters, who had paid for one hundred hogsheads of sugar, the cargo of the schooner, insured by them. The two cases were cumulated and tried together, and the defendants are appellants from a judgment in each case against them.
The collision occurred in the night when the steamer was as *155 cending the river Mississippi, and the sehooner was descending. In such eases it is extremely difficult to ascertain with proper certainty, the circumstances attending the accident, owing partly to the confusion and alarm with which such casualties are always attended, and partly to the bias on the minds of the crew, and even of the passengers on board, in favor each of their own vessel. The mind of the Judge or jury is thus liable to be bewildered and confused by these cross-lights of evidence, and finds it difficult to figure to itself the exact position of the two vessels immediately preceding, and at the moment of the collision, and to ascertain the means used by one or both to avoid the catastrophe. In the present case, for example, if we believe the officers and crew of the schooner, it was a clear star-light night ■ while it is equally well proved by the officers and passengers on board the steamer, that it was very dark and had been raining, although the outline of the bank of the river was visible and sufficiently distant for safe navigation. One thing, however, appears certain, to wit, that the schooner struck the steamer head on, nearly at right angles, between the fore hatchway and the boilers, on the starboard side; her bow was stove in, and she sunk very soon» while the steamer received no injury.
Between a vessel propelled by steam and another by wind, under ordinary circumstances, the means of avoiding a collision are greatly in favor of the former, in consequence of the controL which human ingenuity has contrived over the more powerful agent itself, by means of which the vessel may be stopped, its course changed in any direction, and even backed. In one respect, however, the steamer has no advantage over a sailing vessel in the night. A steamer may be seen, and, when on the high pressure principle, may be heard at a much greater distance than a sailing vessel. The fires of the furnace, the lights from the cabin windows, the volume of black smoke, and often pencils of sparks issuing from the chimneys, and the puffs of the escape pipe, give warning of its approach. At the same time the noise of the engine and the wheels, and the escape of steam render it more difficult to hear the hailing of another boat, or cries from the banks of the river. Hence it is not difficult to account for the officers on board the Ohio Belle not having heard the repeated *156 hailing from on board the schooner. It is also well known, that with a light near the eye, distant objects cannot be seen as well as without such light; and hence we find no difficulty in giving credence to the uncontradicted statement of the officers and passengers on board the steamer, that the schooner was not seen until she had approached very near the steamer, certainly not further off than two hundred yards. Some of the witnesses say much nearer, and approaching in a direction to cross the track of the steamer, nearly at right angles. In this the concurrent positive testimony of all the witnesses who were on board the steamer, must outweigh the negative statements, or opinions of others, either on shore or on board the schooner.
The plaintiffs cannot complain if we take the statement of the captain of the schooner as true, in relation to the circumstances which preceded the collision. It is admitted, that the schooner was descending the-river after having taken in her cargo of sugar, and was under full sail. The captain says in his testimony, “ when they first saw the steamer, she was about a mile and a half from the schooner, and was hugging the shore, as they usually do, and the schooner was in the middle of the river; the wind was north-west, being in an excellent quarter to descend the river.” According to this account of the occurrence, about fifteen minutes elapsed from the time they first saw the steamer, to the moment when the concussion took place. With the wind and current both favorable, it is not1 easy to understand why the captain of the schooner did not change his course so as to avoid the steamer. It is not satisfactorily shown that any thing prevented his doing so. On the other hand, there appears no good reason to doubt, that there was a proper look-out on board • the steamer, and that the schooner was not seen until it was so near as to leave little time for proper measures to avoid her.
It has been urged as a proof of culpable recklessness on the part of the officers of the steamer, that they did not stop to offer assistance to the sufferers on board of the schooner. Such an argument would have considerable force, if it were shown that the extent of the injury was known at the moment. But the thing was so sudden, and created such alarm for the safety of the *157 steamer itself, that in the confusion and darkness, no one appears to have been aware that any serious injury had been inflicted.
Upon the whole, an attentive examination of the whole evidence leaves it doubtful, in our opinion, whether any fault was attributable to the defendants ; and we think the plaintiffs have failed to make out their case.
It is, therefore, ordered and decreed, that the judgment of the District Court be reversed ; and it is further adjudged, that ours be for the defendants, with costs in both courts.*

 Canon, Maybin and Grymes, for a re-hearing, contended that the judgments of the lower court, being on mere questions of fact, should not be disturbed unless manifestly erroneous. Bordelon v. Kirkpatrick, 3 Rob. 159. That admitting that all the fault is not proved to have been on the part of the officers of the steamer, but that both parties were to blame, the rule in admiralty should prevail, and the loss be divided. Jacobson’s Sea Laws, 328. 1 Emerigon, ch. 12, § 14, p. 413 2 Valin, book 3, tit. 7, art. 10. 3 Kent, 230, 231. 1 Bell’s Comm. 489, 490. 2 Dodson’s Adm. Reports, 55. Brickell v. Frisby, 2 Rob. 204. The collision occurred in this State, and should be governed by the maritime law. 1 Howard’s Supreme Court Reports.

Re-hearing refused.